Opinión disidente emitida por el
Juez Asociado Señor Estrella Martínez, a la cual se unen la Jueza Asociada Señora Pabón Charneco y los Jueces Asociados Señores Kolthoff Caraballo y Rivera García.
Este Tribunal tuvo la ocasión para reconocer que el principio de proporcionalidad es una herramienta que contribuye a ejercer cabalmente nuestra facultad revisora, *548 en lo concerniente a la imposición de multas o sanciones administrativas. Empero, optó por descartar tal curso de acción, a pesar de que es nuestro deber evitar que las agencias administrativas abusen de su discreción o incurran en un proceder arbitrario y caprichoso en el referido ámbito.
Por estar convencido de que el principio de proporcionalidad está estrechamente vinculado a los diversos factores que los tribunales deben considerar en su función de revisar las determinaciones administrativas, no me queda más que disentir del dictamen que emite esta Curia.
A continuación, exponemos el escenario fáctico y procesal que suscitó la controversia de epígrafe.
I
El 30 de junio de 2009, el Hospital del Maestro (Hospital) presentó ante la Oficina del Comisionado de Seguros de Puerto Rico (OCS o peticionaria) una solicitud de intervención en contra de Triple-S Salud, Inc. (Triple-S o recurrida). En específico, el Hospital reclamó el pago de $348 por unos servicios de salud prestados a una paciente.
Realizada la correspondiente investigación, el 17 de febrero de 2011 la OCS emitió una Orden imputándole a Triple-S haber infringido varias disposiciones, a saber: los Arts. 2.130(1),(1) 30.030(2) y 30.070(3) del Código de Seguros de Puerto Rico, 26 LPRA sees. 245(1), 3002 y 3006; los Arts. *549 4(B)(4) y (C)(1),(5) 8(6) y 11(7) de la Regla Núm. 73 del Reglamento de la Oficina del Comisionado de Seguros de Puerto Rico, Reglamento Núm. 6559 de 8 de enero de 2003, y el Art. 6(8) de la Regla I-A del Reglamento del Código de Seguros.
En lo pertinente, la OCS le atribuyó a Triple-S lo siguiente: (1) no contestar la querella incoada por el Hospital en el término establecido; (2) no pagar por el servicio que prestó el Hospital ascendente a $348, y (3) no presentar evidencia del pago de la reclamación ni de los intereses legales correspondientes. Como corolario de lo anterior y bajo el fundamento de que Triple-S obstruyó la investigación en cuestión, la OCS impuso a la recurrida una multa administrativa de $10,000. Asimismo, le ordenó pagar la cantidad que reclamaba el Hospital por los servicios prestados no pagados, conjuntamente con los intereses legales correspondientes.
A raíz de ello, Triple-S solicitó una vista administrativa ante la OCS. Esta se celebró el 9 de mayo de 2011. Luego de examinada la prueba y de los trámites de rigor, el 15 de septiembre de 2011 el Comisionado de Seguros (Comisio *550 nado) emitió una Resolución mediante la cual confirmó la Orden dictada. En lo pertinente, el Comisionado realizó unas determinaciones de hechos, entre las que se encuentran las siguientes: (1) mediante la Carta PP-383 de 22 de octubre de 2009, la OCS requirió a Triple-S que, en el término de quince días, sometiera evidencia del pago de la reclamación, en conjunto con los intereses legales correspondientes y la contestación a la querella presentada por el Hospital;(9) (2) Triple-S contestó el requerimiento, pero no sometió la evidencia solicitada; (3) trascurrido el término de quince días dispuesto y sin que la OCS concediera un término adicional, el 2 de marzo de 2010 Triple-S presentó su contestación solicitando el archivo y cierre de la investigación; (4) mediante la Carta PP-814 de 18 de junio de 2010, la OCS señaló a Triple-S que aún no había sometido la información solicitada en la Carta PP-383, por lo que le requirió cumplir cabalmente con lo ordenado en la Carta PP-383 no más tarde del 28 de junio de 2010;(10) (5) el 30 de junio de 2010, posterior al término concedido, Triple-S presentó su contestación a la Carta PP-814; (6) a la fecha de la vista administrativa, Triple-S tampoco había pagado la cantidad que se le reclamó ni los intereses legales correspondientes. Oportunamente, Triple-S presentó una solicitud de reconsideración, pero el foro administrativo la declaró “sin lugar”.
En desacuerdo, Triple-S recurrió ante el Tribunal de Apelaciones mediante un recurso de revisión. Luego de varios incidentes procesales, el 31 de mayo de 2013 el foro apelativo intermedio dictó Sentencia mediante la cual confirmó la Resolución de la OCS en todos sus extremos. Inconforme con el dictamen, Triple-S presentó una moción de *551 reconsideración. Mediante Resolución de 2 de julio de 2013, el Tribunal de Apelaciones modificó el dictamen de la OCS para reducir la multa impuesta a $1,000. Ello, según dictaminó el foro judicial, para que la referida multa “refleje una proporcionalidad equitativa a la falta incurrida y se evit[e] una injusticia”.(11)
Ante el proceder del foro apelativo, la OCS solicitó la reconsideración, pero fue declarada “no ha lugar”. Así las cosas, la peticionaria acudió ante esta Curia mediante un recurso de certiorari y señaló la comisión de los errores siguientes:
Erró y abusó de su discreción el Tribunal de Apelaciones al sustituir el criterio de la OCS por el suyo propio y, consecuentemente, reducir la multa administrativa impu[es]ta a Triple-S Salud, Inc. por haber ésta cometido varias infracciones al Código de Seguros y su Reglamento, bajo el único fundamento de que “refleje una proporcionalidad equitativa a la falta incurrida y se evit[e] una injusticia”. Con dicha actuación, el foro recurrido privó al Comisionado de Seguros de su facultad de determinar la sanción adecuada para poner en vigor las disposiciones del complicado esquema regulador que establece el Código de Seguros.
Erró y abusó de su discreción el Tribunal de Apelaciones al no brindarle deferencia a la determinación administrativa respecto a la multa impuesta haciendo completa abstracción a los precedentes judiciales en tomo al alcance de la revisión judicial de las determinaciones administrativas mediante la cual se imponen sanciones. Tal jurisprudencia sostiene firmemente que la revisión judicial de la facultad de las agencias para imponer sanciones “no será para determinar si la sanción impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la misma es demasiado fuerte”, ya que tal evaluación le corresponde a la propia agencia que por su experiencia especializada es quien está en mejor posición para conceder los efectos de una violación a los intereses protegidos.
El 28 de febrero de 2014 emitimos una Resolución mediante la cual ordenamos a Triple-S mostrar causa por la cual no debíamos revocar el dictamen recurrido. Ambas *552 partes comparecieron y, de nuestra parte, solo resta exponer los fundamentos y el razonamiento que sustenta este disenso.
II
Como es sabido, en nuestro ordenamiento jurídico la industria del negocio de seguros es un sector revestido de profundas consideraciones de política pública. Por tal motivo, el Estado tiene un interés legítimo en reglamentarlo de manera rigurosa. Particularmente, el Comisionado de Seguros es el funcionario llamado a reglamentar y fiscalizar este sector. Por ello, se le han conferido amplios poderes y facultades para velar por el cumplimiento minucioso de las disposiciones del Código de Seguros y su Reglamento.
En lo pertinente al asunto ante nuestra consideración, el Código de Seguros delega al Comisionado la potestad para “llevar a cabo las investigaciones y exámenes que considere necesari[o]s para asegurar el cumplimiento de las disposiciones del Código, su reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de éstas”.(12) En el ejercicio de tal función, el Comisionado tiene autoridad para utilizar aquellos mecanismos que estime necesarios.
A su vez, este funcionario tiene el poder de adjudicar controversias vinculadas a infracciones al Código de Seguros o a su reglamento. En lo que atañe a la controversia de autos, la Ley para el Pago Puntual de Reclamaciones a Proveedores de Servicios de Salud(13) delegó al Comisionado la jurisdicción original para atender y resolver las reclamaciones que surjan entre los proveedores de servicios y las aseguradoras. En síntesis, esta ley creó el Capítulo 30 del Código de Seguros y encarna la política pública *553 del Estado con el propósito de promulgar las normas necesarias que garanticen y regulen el pago de las reclamaciones de proveedores de servicios de salud a las aseguradoras.
De igual forma, con el propósito de evitar transgresiones al aludido código o a su reglamento, se le ha concedido al Comisionado la autoridad para imponer multas administrativas o sanciones.(14) A esos efectos, el Art. 2.130 del Código de Seguros de Puerto Rico dispone que “[t]oda persona que obstruya, ayude o contribuya a la obstrucción, dilación o entorpecimiento de la investigación podrá ser sancionada con una multa no menor de quinientos [dólares] ($500) ni mayor de diez mil dólares ($10,000) [...]”. (Corchetes en el original).(15) Esto, ya que el Código de Seguros expresamente establece que toda persona que sea investigada debe facilitar la pesquisa y hacer accesible al Comisionado todos aquellos documentos que estén bajo su poder y que sean pertinentes a la materia investigada.(16)
III
A. Es norma reiterada que las determinaciones de las agencias administrativas gozan de una presunción de corrección y regularidad. Por lo tanto, los foros judiciales deben otorgar deferencia a los dictámenes emitidos por las agencias con respecto a las leyes y los reglamentos que administran, y no descartar libremente sus conclusiones e interpretaciones. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); JP, Plaza Santa Isabel v. Cordero Badillo, 177 DPR 177, 186 (2009); Cruz v. Administración, 164 DPR 341, 357 (2005). Ello, pues en nuestro ordenamiento rige la norma de la deferencia a las decisiones *554 administrativas. Como sabemos, esta norma ha sido estatuida en la Ley de Procedimiento Uniforme del Estado Libre Asociado de Puerto Rico(17) (LPAU) y desarrollada mediante pronunciamientos jurisprudenciales.
A tales efectos, la función determinante de la revisión judicial es asegurar que las agencias administrativas procedan acorde con el poder que se les ha delegado y de manera compatible con la política legislativa.(18) Así, la revisión judicial de las decisiones administrativas debe circunscribirse a examinar si la actuación de la agencia fue arbitraria, ilegal o tan irrazonable que constituya un abuso de discreción. Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 941; Calderón Otero v. C.F.S.E., 181 DPR 386, 396 (2011); JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 187.
Es doctrina firmemente establecida que la revisión judicial de los dictámenes administrativos se distingue por si se trata de determinaciones de hechos o si se trata de conclusiones de derecho. De esta forma, las determinaciones de hechos de las agencias se sostendrán si están fundamentadas en evidencia sustancial que obra en el expediente de la agencia.(19) Este tipo de evidencia la definimos como aquella evidencia “relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión”. Rebollo v. Yiyi Motors, 161 DPR 69, 77 (2004). Véase, también, Misión Ind. P.R. v. J.P., 146 DPR 64, 131 (1998). Además, la norma de prueba sustancial se sostiene en la premisa de que son las agencias las que producen y determinan los hechos en los procesos administrativos y no los foros judiciales.(20)
*555 Por el contrario, las conclusiones de derecho pueden revisarse en todos sus aspectos.(21) Empero, los tribunales no pueden descartar libremente, sin más, las determinaciones e interpretaciones de las agencias administrativas. En ese sentido, solo podrán sustituir el criterio de la agencia cuando no puedan hallar un fundamento racional que ex-plique o justifique el dictamen administrativo. Asoc. Fcias. v. Caribe Specialty et al. II, supra; JP, Plaza Santa Isabel v. Cordero Badillo, supra, pág. 187. De igual forma, hemos señalado que si en la función revisora los tribunales determinan que el foro administrativo quebrantó directamente garantías constitucionales fundamentales o procedió de manera arbitraria o caprichosa, de ordinario, los foros judiciales pueden intervenir y sustituir el criterio de la agencia por el suyo. Fac. C. Soc. Aplicadas, Inc. v. C.E.S., 133 DPR 521, 533 (1993).
En fin, consecuentemente esta Curia ha expresado que la revisión judicial de las decisiones de las agencias, de ordinario, suele limitarse a examinar si: (1) el remedio concedido por la agencia fue apropiado o razonable; (2) las determinaciones de hecho realizadas están sostenidas por evidencia sustancial que obra en el expediente, y (3) las conclusiones de derecho fueron las correctas. Asoc. Fcias. v. Caribe Specialty et al. II, supra, pág. 940.
B. Dentro de las amplias facultades conferidas a las agencias administrativas se encuentra el poder para imponer penalidades: multas y sanciones. Reiteradamente se ha validado la delegación de este poder a los foros administrativos con el fin de poner en vigor las leyes y los reglamentos aplicables y lograr los objetivos de la agencia. Conforme las disposiciones de la LPAU, “[t]oda violación a las leyes que administran las agencias o a los reglamentos emitidos al amparo de las mismas podrá ser penalizada *556 con multas administrativas que no excederán de cinco mil dólares ($5,000) por cada violación”(22) Adviértase que el referido esquema legal establece que si la ley habilitadora permite la imposición de una penalidad administrativa mayor a la establecida, la agencia está facultada para imponer tal penalidad.
En su función revisora, los tribunales han reconocido discreción a las agencias en cuanto a la selección de las medidas que les auxilien en su función de velar por el cumplimiento de las leyes y los reglamentos cuya administración e implantación se les ha delegado. Por su experiencia especializada, el foro administrativo es el que se encuentra en mejor posición de conocer las consecuencias de las infracciones a los intereses que resguarda y, por ende, de determinar la penalidad para sancionar tal violación. Ahora bien, esa discreción debe reconocerse siempre que las agencias actúen dentro del marco de su conocimiento especializado y de la ley. Comisionado de Seguros v. PRIA, 168 DPR 659, 667 (2006); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 DPR 425, 438 (1997).
Hemos sido diáfanos en señalar que el conocimiento especializado o el manejo de cuestiones técnicas no proveen una carta en blanco para que la agencia actúe caprichosa, arbitraria o irrazonablemente. Así, los tribunales deben brindar considerable deferencia siempre que la penalidad administrativa esté fundamentada en evidencia sustancial, no constituya una actuación ultra vires y tenga una relación razonable con los actos que se quieren prohibir. Comisionado v. Prime Life, 162 DPR 334, 341 (2004); O.E.G[.] v. Román, 159 DPR 401, 417 (2003); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, pág. 439. Asimismo, esa discreción de las agencias para imponer determinadas penalidades debe sostenerse mientras no procedan arbitraria o caprichosamente o abusen de la discreción que se les ha *557 conferido. Comisionado de Seguros v. PRIA, supra, pág. 668; Com. Seg. P.R. v. Antilles Ins. Co., 145 DPR 226, 234 (1998). Es decir, si no existe prueba en el expediente que justifique la imposición de la sanción o, por el contrario, existe evidencia que menoscabe el fundamento que sostiene la determinación de la agencia, los tribunales deben revisar la decisión administrativa para impedir actuaciones caprichosas. Ello, ya que los foros judiciales “tienen que evitar que los administradores actúen ilegalmente o cometan arbitrariedades al imponer sanciones”. (Énfasis suplido). Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra, pág. 440
C. Como señalamos, es obligación de los foros judiciales asegurar que la penalidad impuesta no transgreda los límites de lo legal ni constituya un claro abuso de discreción. Contrario a lo que razona una Mayoría de este Tribunal, entendemos que para ejercer tan trascendental función, los tribunales debemos tener potestad para revisar si las penalidades administrativas guardan justa correspondencia con la infracción por la cual se impone la sanción.
Entonces, si bien sostenemos que la facultad revisora de las determinaciones administrativas es limitada, entendemos que los tribunales no deben ver circunscrita su autoridad de examinar si la penalidad administrativa es equilibrada con la conducta que se imputa. Por ello, a diferencia de lo que rechaza una Mayoría de este Tribunal, consideramos que a los tribunales nos compete evaluar la proporcionalidad entre penalidad y falta, así como la determinación de si la sanción es demasiado fuerte o excesiva en relación con la conducta imputada. Ello, pues soy del criterio de que una penalidad excesiva, demasiado fuerte o que no guarde proporción con la actuación incurrida, puede acarrear abuso de discreción o conllevar actuaciones caprichosas o arbitrarias por parte del foro administrativo. Estos son factores a considerar cuando se revisan judicialmente las determinaciones de las agencias.
*558 De la misma forma, considero que el aspecto de la proporcionalidad se remite al criterio de la razonabilidad, por lo que está estrechamente atado a este último. Sin duda, una multa desproporcionada quebranta los límites de lo razonable. Tal como afirma el profesor Fernández Quiñones, la razonabilidad de la multa es fundamental para que en la revisión judicial se reconozca la validez de la acción administrativa.(23) Al reconocer que la razonabilidad de la actuación de la agencia constituye uno de los criterios a considerar cuando se revisan sus determinaciones, la proporcionalidad también debe ser parte de los aspectos que se deben examinar en la revisión judicial. En consecuencia, sostenemos que no es deber de los tribunales brindar una deferencia extrema, sin más, a las agencias administrativas en cuanto al asunto de proporcionalidad entre la penalidad impuesta y la infracción cometida. Este aspecto también está sujeto a revisión.
IV
La Mayoría de este Tribunal pasa por alto que en muchos ordenamientos jurídicos se reconoce que el examen de la proporcionalidad debe jugar un rol trascendental en la revisión judicial de las decisiones administrativas en cuanto a las penalidades se refiere. Dentro del ámbito del derecho administrativo, este principio cardinal se ha definido como la observancia o inobservancia de la debida adecuación entre la gravedad de la actuación y la sanción aplicada.(24) En virtud del mencionado principio, se establece que todas las medidas que afectan los derechos de los seres humanos deben ser proporcionales y razonables.(25) *559 Así, se refleja el vínculo estrecho que existe entre la proporcionalidad y la razonabilidad, tal y como lo expusimos.
Por lo tanto, opino que nuestro ordenamiento también debe ser receptivo a la aplicación del principio de proporcionalidad en la esfera del derecho administrativo. Su introducción a nuestro ordenamiento no descarta la deferencia que los foros judiciales deben otorgar a las acciones administrativas. Más bien, constituye un valioso instrumento de control al poder discrecional de la agencia; una garantía jurídica frente al ejercicio de las facultades administrativas. Entendemos que este principio, utilizado en la mayoría de las materias jurídicas, se ha convertido en un recurso fundamental, ya que “se configura como un instrumento eficaz en el control jurídico [...] de las decisiones discrecionales”.(26)
Ante ello, consideramos que existen actuaciones administrativas, en lo que concierne a la imposición de penalidades, que deben quedar sometidas a la observancia del principio de proporcionalidad. Esta observancia se concreta con la exigencia de que este tipo de penalidad sea adecuada, necesaria y, sobre todo, equilibrada. Con ello, se reconoce la potestad de los tribunales para examinar la necesaria correlación que debe existir entre la infracción cometida y la sanción administrativa.
En contraposición a lo que la Mayoría de este Tribunal descarta, sin más, la observancia del principio de proporcionalidad propicia una revisión judicial responsable que permite garantizar que en la imposición de una penalidad administrativa hayan mediado los criterios de razonabilidad, así como la ausencia de actuaciones arbitrarias o caprichosas.
Como expusimos, revisar la proporción entre penalidad e infracción contribuye, precisamente, a efectuar de forma *560 cabal nuestra función revisora de determinar si una multa es irrazonable.
V
En el caso de marras no hay controversia con respecto a si las infracciones imputadas a Triple-S se cometieron. El Tribunal de Apelaciones confirmó el dictamen de la OCS sobre este particular y ninguna de las partes lo disputa ante este Tribunal.
Ahora bien, como expusimos, se cuestiona ante nos la facultad del foro apelativo intermedio para reducir, en un noventa por ciento, la multa administrativa impuesta. Según alega la OCS, la determinación del foro judicial tuvo el efecto de despojar al Comisionado de su facultad de vigilar por que se cumpla con el alto interés público que involucra la industria de seguros. A su vez, sostiene que la actuación del mencionado foro privó a este funcionario de su poder de determinar la sanción adecuada cuando se quebrantan las disposiciones del Código de Seguros y su reglamento. Para la OCS, el dictamen del foro apelativo fue escueto e incompleto, y contrario al principio de amplia discreción otorgada a las agencias para imponer penalidades.
Además, la OCS arguye que la actuación del Tribunal de Apelaciones contraviene los pronunciamientos jurisprudenciales de esta Curia con respecto a la revisión judicial. Finalmente, en cuanto al asunto medular de la reducción de la multa, la OCS sentenció que “para un regulado como Triple-S, la multa administrativa de $1,000.00 no resulta un disuasivo suficiente para evitar que incurra nuevamente en unas faltas, como las que aquí nos ocupan, las cuales se consideran de gran seriedad para la OCS [...]”. (Énfasis suplido).(27)
*561 Por su parte, Triple-S señala que la OCS impuso la multa de $10,000 sin llevar a cabo un análisis de las razones que motivaron tal penalidad. Sostiene que el foro administrativo omitió por completo todo análisis particularizado sobre la conducta atribuida. Asimismo, la recurrida aduce que medió ausencia de proporcionalidad, pues la cuantía impuesta por la OCS no guarda relación equitativa con la falta imputada de no pagar a tiempo una reclamación de $348. Además, Triple-S alega que la OCS incurrió en trato desigual y discriminatorio al castigarla arbitrariamente, por ser una aseguradora con un alto volumen de negocios.
Conforme indicáramos, la OCS impuso a Triple-S una multa administrativa de $10,000. Luego de varios incidentes procesales, esa multa fue reducida a $1,000 por el Tribunal de Apelaciones bajo el argumento de que no existía una proporción adecuada entre la penalidad y la falta. Distinto al dictamen emitido por una Mayoría de este Tribunal, avalamos cualitativa pero no cuantitativamente el curso de acción del foro apelativo intermedio, pues entendemos que no incidió al efectuar la reducción de la multa al amparo del fundamento señalado. Nos explicamos.
A tenor con la normativa expuesta, entendemos que el foro apelativo intermedio, en el ejercicio de su función revisora, actuó correctamente bajo las circunstancias de este caso al examinar si la penalidad aplicada era equilibrada en relación con las infracciones cometidas por Triple-S. De la Resolución recurrida podemos colegir que el aludido foro analizó la multa administrativa impuesta y, a base de su proporción con las faltas cometidas, concluyó que no era una actuación razonable de la agencia. Nuestro examen nos lleva a sostener que el proceder de la agencia ante los hechos particulares de este caso, sin duda, excedió los límites de lo razonable al aplicar una multa claramente desproporcionada en relación con lo imputado. A todas luces, la actuación de la agencia cuando impuso una multa por la cantidad descrita discurre en el terreno de lo caprichoso y lo *562 arbitrario. Esto, ya que del monto de alternativas disponibles la agencia seleccionó la cantidad más onerosa, sin esbozar alguna justificación razonable para ello.
Ciertamente, una multa de $10,000 no guarda un vínculo proporcional con lo imputado a Triple-S. Esto es, una deuda de $34, unido al incumplimiento reiterado de replicar una reclamación dentro del término requerido, a no presentar evidencia de pago y no acatar las órdenes emitidas por el Comisionado, no alcanza una gravedad tal que deba imponérsele a la recurrida el tope de la multa que provee el Código de Seguros. Las circunstancias particulares del caso no justifican tal curso de acción. De hecho, las mismas expresiones del Comisionado al aducir que una multa de $1,000 no representaría un verdadero disuasivo para Triple-S, nos llevan a concluir que la multa impuesta por la agencia fue desproporcionada, lo que refleja, como señalamos, una acción arbitraria, caprichosa e irrazonable del Comisionado. Esto, indiscutiblemente, provoca que no confluyan las condiciones para otorgar y sostener la deferencia.
Ante esa realidad, este Tribunal debió examinar y sopesar la justa proporción que debe caracterizar el vínculo entre falta y penalidad. Sin embargo, la Mayoría optó por la deferencia desproporcional. No podemos desviar la mirada y pasar por alto que en una multa administrativa desproporcionada pueden resguardarse acciones que no podemos tolerar.
Entonces, aunque sostenemos que el Tribunal de Apelaciones tenía facultad para examinar el aspecto de la proporción, a la luz de los fundamentos expuestos modificaríamos su dictamen en el ámbito cuantitativo. Al examinar detenidamente los documentos que obran en autos, así como las disposiciones del Código de Seguros y su reglamento, encontramos que una penalidad de $1,000 tampoco es cónsonacon lo imputado a Triple-S. Llegamos a esta determinación, pues de la evidencia que obra en el expediente surge diáfanamente que la recurrida infringió varias disposiciones del *563 Código de Seguros y su reglamento, y que, además, incurrió en conducta temeraria al incumplir con la exigencia de cooperar con la pesquisa realizada por la OCS. En vista de que estas acciones desafían abiertamente el gran interés público que rige la compleja industria de seguros, no podemos avalar la imposición de una multa de mil dólares. Esta cantidad también resulta desproporcionada en comparación con las acciones de Triple-S.
En este escenario, modificaríamos a cinco mil dólares la cuantía de la multa administrativa impuesta como corolario de las faltas señaladas y probadas por el Comisionado, así como de la conducta presentada por Triple-S al incumplir reiteradamente con las órdenes de este funcionario bajo el apercibimiento de las consecuencias que ello acarreaba. Nuestro minucioso análisis del expediente nos lleva a concluir que una multa por esta suma es la penalidad más adecuada, necesaria y equilibrada en relación con el proceder de Triple-S. Ello para que prevalezca la política pública legislada que vincula a la industria de seguros, para que nuestra función revisora cumpla un propósito en la búsqueda de solución a los problemas planteados y, más aún, para evitar vindicar una acción arbitraria y caprichosa que no estuvo enmarcada en la razonabilidad.
En fin, con los fundamentos expuestos en este disenso no socavamos el rol fiscalizador del Comisionado ni, mucho menos, su potestad para determinar razonable y objetivamente las penalidades administrativas adecuadas. Tampoco cabe hablar de “análisis de novo” y de interferencias con la política pública de las agencias en el contexto de la revisión del aspecto de la proporcionalidad, por lo que señalamientos sobre el particular no tienen méritos. Más bien, el examen de la debida proporción entre la penalidad e infracciones cometidas, para así cumplir con nuestro rol de evitar que las agencias administrativas actúen arbitraria, irrazonable o caprichosamente, o abusen de su discreción, exige un dictamen como el formulado en este disenso.
*564 VI
Al amparo de los fundamentos que anteceden y ante la opción de la Mayoría de ampararse en la deferencia desproporcional, que limita irrazonablemente el acceso a los tribunales para atender reclamos contra actuaciones administrativas arbitrarias, caprichosas o irrazonables, disiento.

 Establece la obligación que tiene toda persona que sea investigada de cooperar activamente con la pesquisa. Véase 26 LPRA see. 245(1).

 Dispone que el asegurador está obligado a pagar la reclamación dentro del término de cincuenta días, a partir de la fecha cuando la reciba. Véase 26 LPRA see. 3002.

 En lo pertinente, establece que cualquier reclamación que no se pague dentro del término dispuesto devengará intereses. Véase 26 LPRA see. 3006.

 En lo que atañe a la controversia de epígrafe, señala que el plazo de cincuenta días (o el acordado entre las partes) para pagar una reclamación empieza a transcurrir cuando ésta se reciba. Normas para regular el pago puntual de reclamaciones a los proveedores de servicios de salud, Reglamento Núm. 6559 de la Oficina del Comisionado de Seguros de Puerto Rico de 8 de enero de 2003. Este reglamento fue enmendado por el Reglamento Núm. 8197 del Departamento de Estado de 11 de mayo de 2012.

En síntesis, dispone que luego de recibir una reclamación, el asegurador deberá pagar la totalidad de esta dentro del término dispuesto. Reglamento Núm. 6559, supra.

 En lo pertinente, establece que el asegurador que no cumpla con el término para pagar estará obligado al pago de intereses. Reglamento Núm. 6559, supra.

 En lo que concierne al presente caso, señala que todo asegurador deberá establecer un procedimiento para atender las querellas. Estas querellas deberán resolverse en un término no mayor de treinta días calendario. Reglamento Núm. 6559, supra.

 Establece, en síntesis, que toda persona investigada deberá cooperar plenamente con la pesquisa que realice el Comisionado de Seguros. Regla I-A, Procedimientos de Investigación, Reglamento Núm. 5266 de la Oficina del Comisionado de Seguros de Puerto Rico de 3 de julio de 1995. Este reglamento fue enmendado por el Reglamento Núm. 8077 de 26 de septiembre de 2011.

 También se le apercibió a Triple-S que no contestar en el término establecido, constituiría una obstrucción al poder de investigación que la ley le confiere al Comisionado de Seguros.

 Nuevamente, se le apercibió que no cumplir con el requerimiento dentro del término concedido, constituiría una obstrucción al poder de investigación del Comisionado de Seguros y un incumplimiento de una orden del mencionado funcionario.

 Resolución del Tribunal de Apelaciones de 2 de julio de 2013, Apéndice, págs. 554-555.

 26 LPRA see. 235(12).

 Ley Núm. 104-2002 (26 LPRA. sec. 3001 et seq.).

 El Comisionado de Seguros puede imponer tales penalidades o sanciones a iniciativa propia o después de presentada una querella por un proveedor participante. Véase 26 LPRA secs. 235 y 3007.

 26 LPRA sec. 245(2).

 íd.

 Ley Núm. 170 de 12 de agosto de 1988 (3 LPRA sec. 2101 et seq.).

 Véase D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 3ra ed., Colombia, Ed. Forum, 2013.

 3 LPRA sec. 2175.

 Fernández Quiñones, op. cit., pág. 711.

 En aquellos casos en los que se presenten controversias mixtas de hecho y de derecho, los foros judiciales deben examinar si el dictamen de la agencia constituye un ejercicio razonable y si es cónsono con el propósito legislativo.

 3 LPRA sec. 2201.

 Fernández Quiñones, op. cit, pág. 109.

 J. López González, El principio de proporcionalidad en el derecho administrativo, disponible en: http://revistasonline.inap.es/index.php/CDP/article/ download / 513/568

 J. Cianciardo, The Principle of Proportionality: the Challenges of Human Rights, 3 J. Civ. L. Stud. 177 (2010).

 I. Perelló Domenech, El principio de proporcionalidad y la jurisprudencia constitucional, pág. 69, disponible en: http://dialnet.unirioja.es/descarga/articulo/ 174691.pdf

 Petición de certiorari, pág. 4.